933 F.2d 128
 Robert H. COVINO, Plaintiff-Appellant,
v.
VERMONT DEPARTMENT OF CORRECTIONS; Joseph Patrissi,
Commissioner; Heinz Arenz, Superintendent; Peter Machia;
"S/S" Finnigan; "CO/B" Duel; "CO/B" Taylor; and "S/S"
Charles Gross, Defendants-Appellees.
 No. 1367, Docket 91-2002.
 United States Court of Appeals,
Second Circuit.
 Submitted April 18, 1991.
Decided May 14, 1991.
 
 Robert H. Covino, pro se.
 Michael McShane, Asst. Atty. Gen., State of Vt. (Jeffrey L. Amestoy, Atty. Gen., State of Vt., Thomas J. Rushford, of counsel), for defendants-appellees.
 Before LUMBARD, FEINBERG and McLAUGHLIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Robert H. Covino was a pre-trial detainee at the Northwest State Correctional Facility ("NWSCF") in Swanton, Vermont. He brought this action for damages and injunctive relief pursuant to 42 U.S.C. Sec. 1983, alleging that defendants-appellees Vermont Department of Corrections, its Commissioner, Joseph Patrissi, NWSCF's Superintendent Heinz Arenz and various turnkeys at NWSCF harassed Covino in violation of various rights secured by the fourteenth amendment. Specifically, Covino complains that on April 4, 1989, he was ordered to move from his single cell in the F-wing, a general population wing at NWSCF, to a double cell at the facility; he was told that the move was necessary to accommodate a handicapped prisoner. Covino claims that he asked the turnkeys not to place him in a double cell, but to place him in any other single cell at NWSCF. Taking him literally, the officials placed Covino in a single cell in NWSCF's D-wing, which allegedly is the facility's isolation wing. Covino remained in the D-wing for nine months. The record does not disclose whether Covino was tried and convicted of any crime.
 
 
 2
 Appellees served a late answer and moved for summary judgment. Covino cross-moved for a default judgment. The district court granted appellees' motion, concluding that, because no liberty interest in remaining in the general population is found in the due process clause, see Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), Covino's move from the F-wing to the D-wing did not violate his constitutional rights. In so holding, the district court correctly observed that as a pre-trial detainee, Covino's claims were governed by the due process clause, rather than the eighth amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979).
 
 
 3
 We agree with the general proposition that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons" is not a right protected by the due process clause itself. See Hewitt, 459 U.S. at 468, 103 S.Ct. at 869. However, where the state by statute or regulation prescribes mandatory procedures that govern administrative segregation, it thereby creates a liberty interest in remaining in the general prison population. See Russell v. Coughlin, 910 F.2d 75, 77 (2d Cir.1990) (citing Hewitt ). In this case, the district court failed to examine whether Vermont enacted such mandatory regulations or statutes, thereby creating a protected liberty interest. Covino believes that 28 Vt.Stat.Ann. Sec. 853(a) creates a liberty interest in remaining in the general population. Section 853(a) provides in relevant part:
 
 
 4
 For serious breach of the rules the disciplinary committee, in accordance with the regulations of the department, may ... recommend, and the supervising officer may order, that an inmate be confined in a cell or room, apart from the accommodations provided for inmates who are participating in programs of the facility. (1) The period of such confinement shall not exceed thirty days consecutively.
 
 
 5
 Vt.Stat.Ann. tit. 28 Sec. 853(a)(1)(1986). By its terms, however, this statute governs punitive segregation, not administrative segregation and no one claims that Covino was initially placed in the D-wing because of a disciplinary infraction. We are unaware of any Vermont law that governs administrative segregation and the parties have not cited one.
 
 
 6
 Nevertheless, we are troubled by the district court's dismissal of Covino's complaint without an analysis of Vermont law. It should be emphasized that Covino is complaining, not merely of his initial move to the D-wing, but, more importantly, of his continued confinement there for nine months. If no state law creates a liberty interest with respect to administrative segregation, then Covino's initial confinement to the D-wing violated no protected constitutional right. See Russell, 910 F.2d at 77. At some point, however, the administrative necessity for involuntary lock-up begins to pale. Indeed, after nine months, it smacks of punishment. Although the state may lawfully subject a pre-trial detainee to "restrictions and conditions" "to ensure his presence at trial," "those conditions and restrictions [cannot] amount to punishment, or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. at 536-37, 99 S.Ct. at 1872-73. Accordingly, we remand to the district court to determine (1) whether a mandatory Vermont statute or regulation governs Covino's confinement to the D-wing, and (2) whether his nine-month stay there, which "on its face appear[s] to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective." Id. at 539 n. 20, 99 S.Ct. at 1874 n. 20.
 
 
 7
 In addition to the intra-prison move at NWSCF, Covino also complains that his fifth, sixth, eighth and fourteenth amendment rights were violated when he was transferred to NWSCF from Chittenden County Correctional Center, a distance, according to Covino, of 56 miles. Although the due process clause is not implicated when a pre-trial detainee is transferred from one facility to another, see Meachum v. Fano, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); Hohman v. Hogan, 597 F.2d 490, 492 (2d Cir.1979), the district court did not address whether the transfer unconstitutionally impaired Covino's sixth amendment right of access to his trial counsel. See Cobb v. Aytch, 643 F.2d 946, 957 (3d Cir.1981). This claim must also be resolved, in the first instance, by the district court.
 
 
 8
 Finally, we have considered Covino's remaining argument that the district court's denial of his motion for a default judgment was an abuse of discretion and we conclude that it was not. See Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1307 (2d Cir.1991).
 
 
 9
 The judgment of the district court is hereby vacated and the case remanded for further proceedings consistent with this opinion.